Thank you, Mr Baez. You may proceed. Good afternoon, Justices. Good afternoon, Counsel. And may it please the Court. My name is David Baez, and I have the distinct pleasure of representing Cheryl Gilbert and Vicki Baer. Today we're asking, respectfully and humbly, that this Court make an affirmative determination for the Second District on the considerations to be made by trial judges when evaluating and weighing the previously-established Segal factors for a Rule 103b dismissal analysis. More specifically, as was the case here, whether a trial court can consider the length of time when a cause of action is dismissed for want of prosecution prior to vacating a dismissal. When examining the issue of delay in service as it relates to the Illinois Supreme Court Rule 103b, so ultimately whether the time for when a cause of action is not active can be considered. Even if we didn't consider the delay when no cause of action was pending, you're still over five months. Respectfully, Your Honor, it's correct. Five months and ten days when the summons was initially Illinois, Marengo, Illinois, to Western Florida in that interim, and his address on the Illinois Traffic Crash Report was the Marengo, Illinois, address. So what's your point? So my point was we had to hire a special investigator, private investigator, to find the defendant. We were made aware of his whereabouts by the adjuster in this case. The adjuster had let us know that the defendant had moved, but was not at liberty to disclose where. So then we hired a private investigator to find the location, and when we got the summons, we waited to get the summons because in McHenry County they return the summons unless there's an address on there. I wasn't going to put the Illinois address knowing that he didn't live there anymore. I was waiting until I got... When you're four days before the expiration of the statute of limitations, shouldn't the investigation have already included finding where the defendant lived? I understand that, Your Honor, and I addressed that slightly in the brief in that I was in McHenry County. Again, on that, there's no affidavit in the record, no testimony in the record. That is correct, Your Honor. It was a mistake that I own in saying that I didn't write a letter to address that. It was conversations that I had with the adjuster over the phone. It's how I became apprised of the defendant's location. We tendered records and bills over the adjuster. I mean, these are discussions that were happening at the time, and unfortunately, I wish I could go back in time and have memorialized that versus, you know... The stamp on the complaint gave you the conference date and notice that the case could be dismissed for warrant of prosecution on the first complaint and on the second complaint, correct? Correct, Judge. It was just on that one complaint, but we never received a stamp copy of the complaint, which is my fault for not following up, and we didn't receive the notice card because they had mailed it to 4020, which is our old suite address. Was there ever an agreement between you and the insurance company that there wouldn't be a problem with service and appearance? So that was the agreement, as we were discussing in the beginning months. When it became apparent to me that this wasn't going to resolve, we eventually just decided to pursue, and we always kept the option available to still serve the defendant should we have recent impacts on negotiations, and that's kind of what happened here. Well, you didn't quite answer my question, which was, was there an agreement or not? There was, but there was nothing in writing. There was nothing what? Nothing in writing, Your Honor. So it was really just a tacit agreement? A tacit agreement with the adjuster in this case, and I think ultimately, even with the five months as Justice Hewitt brought up, we have cases, especially the Supreme Court case, and it's case back and back, but versus Bealsburg, and that's ultimately the case that we're asking this Court to interpret. There's two different interpretations of it, as the Circuit Court noted, between Sievert and Mueller, and those are appellate-level courses, first and third. And the case was a voluntary dismissal? And the cases were a voluntary dismissal, correct. And the other case you rely on, Sievert, there was only one dismissal for one prosecution. So, and I did want to get that, too, because in Sievert, there was a lot more time that had passed in between Sievert. The address, number one, was always known, right? The address was on the actual Illinois traffic crash report, never changed. The defendant never moved. The motor vehicle accident was filed three days before the statute of limitations, no summons, DWP five months later. Eleven months had passed before vacancy of that dismissal, and then service was effectuated a month after that. So, six months is the total time for service in Sievert. If you remove the eleven months that it took to vacate that dismissal, and that was with an address that was always known to the plaintiff, had never changed from the Illinois traffic crash report. How are we supposed to determine there was an abuse of discretion when what you've been arguing to us isn't in the record? So, a lot of that is in the record, and a lot of that was at the hearings. And you'll notice, too, from the opinion by the lower court judge, of the seven factors, the trial judge in this immediate case uses the phrase or measure of eleven months as justification for his decision in favor of dismissal. For four prongs explicitly, he starts with the first three prongs, just three sentences in each prong, and all three mention eleven months as being a deciding factor of why he made this determination on those prongs. So, for the seven prongs, he uses eleven months in it to justify his decision, and the first three especially, he uses eleven months, eleven months, eleven months. And so, I just think it was an abuse in that he misread the law completely. We appealed that. We asked him to reconsider, and again, even in the reconsideration, he still decided to follow Mueller and say, I'm including that time. I'm evaluating this as eleven months. Reasonable diligence is an objective factor, correct? Correct. Without evidence in your, in the record for your excuses, how can we examine the record and determine that the trial court abuses its discretion? So, I think that there's a certain way. There is no affidavit, nothing in the record to, that would excuse the lack of diligence here. So, I think, Judge, the fact that, and I presented this in our response to the motion to dismiss, the fact that the defendant had moved, the fact that we had, and I understand the need for an affidavit. I had no memorialization of that agreement with the adjuster, which is a fault of mine. But at the end of the day, I did testify to that, to the judge, and we had that discussion at hearing, and we also had the discussion regarding the defendant's whereabouts and the fact that I needed to locate the defendant and serve the defendant in Florida. Again, all within, before the six-month period. When did you talk, say you were talking, go ahead, I'm sorry. When did you learn of his location in Florida? Several months after when I was discussing with the adjuster, and we were reaching impasse. When in time? So, four months, about four months in, four months after. And you hired a skip tracer at that time? Correct. And we got a response from the skip tracer 28 days after that. What about calling the adjuster and saying, what's the address? I did, and that's what I brought up, Your Honor. So I did call the adjuster, and that's how I became aware of the defendant not being in Illinois, but he said he wasn't at liberty to disclose the defendant's new address. That was his exact response to me. That's not in the record? That's not in the record, no. Correct. I did make it known that the defendant's whereabouts were made known by the adjuster, but that they did not provide the address. We had to hire a special investigator. Why should we not consider, in terms of lack of diligence, the time periods between the filings? So, I think Case does a very good job of this. You know, they say dependency of inaction, and I'm quoting Cases. Cases of voluntary dismissal. These are two DWPs. Correct, Your Honor. So, I'm not saying that they can't, the courts can't consider the DWPs themselves, but the time that had lapsed between the DWP and the vacancy of the DWP, there is no pending action. There is no active action. The point is that because of you, you didn't go in to vacate it. So, that's why I'm saying, Your Honor, with all respect, they can definitely consider the dismissal itself, and it's not that I didn't vacate. I did file a motion to vacate the dismissal. Eventually. And within the 30 days, and then we got the hearing when I called the clerk and we got a date that worked. And so, Case did not involve reinstating the same case. It was a new filing with a doctor's report. So, it's different. Correct. I agree that Case is completely different. Language in Case, it's not binding on us. Correct? So, Your Honor, I disagree respectfully with you. So, the case in Case, the Supreme Court did not explicitly state it on purpose, and intentionally, they didn't make a difference between voluntary dismissal and involuntary dismissal. They stated, and I quote, the pendency of an action that a defendant argues is delayed, is central to any determination of whether any passes of time should be considered for purposes of 103B. It is rooted in simple logic. If an action is dismissed and not pending, there is no reason to serve a defendant with process. As such, there is nothing to delay and nothing to be diligent about. They didn't say if a case is voluntarily dismissed. They didn't say if a case was involuntarily dismissed. They said if a case is dismissed, there's nothing pending. The court pointed out that the new complaint was new. It was a different complaint, and there was a doctor's report attached, correct? That is correct. And I would argue that Case was actually far more egregious of a delay in the fact that they filed the initial complaint, the medical malpractice suit, without any intention of ever serving the defendant in the initial suit. They didn't have a 6-2-2 report. They dismissed it weeks later. And then they waited 11 months to refile, to refile a new complaint on the same action and then serve the defendant with a 6-2-2. And in your case, there was no, you didn't attach a summons to either the first or the second complaint. Correct. But theirs, they had delayed essentially a year prior to filing a lawsuit. And theirs, they never had an intention with that first lawsuit, never had an intention of serving the defendant. Why would we assume that you did intend to serve the defendant if you didn't ask for a summons? My, well, Your Honor, I did ask for a summons. I just never issued, I just, well, I asked the court if I could issue any of the summons. But I never actually got a summons because I was negotiating with the adjuster at that time. And so they had let us know. But again, that's, I mean, that's your choice, right? I would, I would agree. But I think at the end of the day, we're still within a 5-month period. As soon as I realize this is not going to resolve. Your argument that 5 months is not long enough, is not too long, is not the same as saying, you've made the decision not to issue a summons right away, for whatever reason, right? It was not intentional not to issue the summons that we have, we were negotiating. And I was going to issue a summons, and I wasn't going to serve the defendant had we not resolved it. You didn't ask for a summons, that's the bottom line, right? That's correct. There was no summons issued on the initial complaint. Did you consider possibly referring the case to another lawyer so that you could have been a witness and an affiant? I did not, Your Honor. Wouldn't that have been a better course, thinking it now? That may have been a better course. Correct, Your Honor. The Supreme Court case, correct me if I'm wrong, appears to be more concerned with the dynamics of a non-suit than 103B. So I think that initial case obviously brings into, you know, the specific facts of a non-suit and a 217 and a refile. But they address, in general, what time you can't. Well, if 103B was applied to every non-suit, every non-suit would be more than five months. Unless, of course, they refile within five months instead of 11 months. And I would just draw our attention to Siebert, who did this analysis on case just a couple years ago. So Siebert, in that case, the trial court correctly ruled, even in the face of a 17-month gap, that only the time while the case is dismissed may be considered. And they went to Case and they said, Case said very explicitly in their analysis, the sum total of days before dismissal and after refiling, but not the time that passes in between when no action is pending. That's applicable throughout, whether it's voluntary or involuntary. They never explicitly stated it only applied to voluntary dismissals. The court would have easily and intentionally specified had they wanted the word dismissal to be parsed later on. Would you agree that there are dynamics in the Supreme Court decision regarding 103B, vis-a-vis its friction or conflict with non-suits? I agree that part of the analysis they took into account. If there is this friction or conflict, what is a trial court supposed to do other than exercising its discretion? So I would also urge the court to look at Case and say, they spent much more time discussing what was possible and what was impossible when a case was dismissed and how that could affect the plaintiff's behavior and actions and what they're able to do when a case is not pending and active. They spent more time on that. They obviously spent time on 217 and the interaction with 103B. A non-suit has a limitation, so to speak, a statute of limitations. And the statute of limitations is one year. And so the focus by the trial court or the trier of fact is, is it less than 365 and a quarter days or is it more than 365 and a quarter days? That's the window. With a 103B, the window is anywhere from five months ad nauseam. Correct? I would argue, Judge, that when there is a dismissal, the plaintiff has a right to vacate that dismissal and there's time prescribed in that while it's dismissed. Same as the time to refile if you have a 217 voluntarily dismissal. I have a right, my clients have a right, to vacate a dismissal within a certain time period. Once that year runs, I can't file a petition and say, hey, can you vacate this dismissal? Or once the 30 days runs, I can't file a motion and say, can you vacate this dismissal? So there's two time periods there that are in play as well. They're very different, I understand that, from a 217, which is very easily prescribed as one year. There are different parameters that have to be reconciled, is my point. Correct, Your Honor. And I just heard the buzzer. Can I continue? You did. Thank you, Mr. Buzzer. I have no other questions. No other questions? No, sir. Joe? Just a point. Siebert, the Apollo Court, affirmed the trial court. Correct? Correct. And Justice Schmidt dissented. He would have granted the dismissal. And he said involuntary dismissal is relevant to a question of diligence. I did read the dissent, Your Honor. I believe that the dissent was taking the position in Mueller, but I wholeheartedly agree with the majority opinion in that case. And with regard to Siebert, it's the trial court or the Apollo Court affirming the trial court's rejection of a motion to dismiss or denial of a motion to dismiss. Here we're being asked to reverse the trial court's dismissal. Your Honor, I'm asking this court to definitively define what the court can consider as length of delay, time when the case is pending and active, or the entirety, including times when cases are dismissed. The rule itself says we should consider the portality of the circumstances. And if we exclude the period between the first dismissal and the refiling, we're not considering the totality of the circumstances. We're removing a circumstance. I disagree, Your Honor. Like I stated earlier, I think you can say, okay, the defendant was served within 5 months and 27 days, but the court can also consider the case was DWP'd twice. And they can consider that without taking into consideration the days where the defendant wasn't served because the case wasn't active and pending. Again, you can punish or, you know, punish a plaintiff by saying this case was DWP'd. Those are – I'm going to take that under consideration, but I can't actually add the time when the case was dismissed as you not trying to get service. Are you aware that what your argument is isn't what is in the record? I disagree, Your Honor. I don't know if we – if I did not get it across properly. The rule says the totality of the circumstances. Correct. And the Supreme Court case talks about you're not supposed to count the days during the DWP. Agreed. But can you consider the DWP? And the point is, is that if you – that's a totality of the circumstance. If you consider those things and without what you have not – or, pardon me, if what you had not put of record was of record, then it is possible we could find that the trial judge did not consider everything and didn't – he abused his discretion. But without what you are telling us, we're looking at a record that basically says there was two DWPs and it was five months. Now, under case law, DWPs are – regardless of the length of time, there are DWPs that you can go in and get vacated the day after it was DWP'd. So we're talking maybe one day at the minimum. But the point is, is that based upon what the record reflects, how are we supposed to say that the trial court abused its discretion when the DWP is a DWP regardless of how long it is and the totality or the net gain or the net loss is five months? So I understand what you're saying, Justice. I disagree on the fact that you can still consider the DWP without making the emphasis of justifying your order as 11 months, three times in a row with the first three prongs, and then again with the seventh prong. The emphasis was on the 11-month period, and it was done over and over and over again in that order. If he – if the judge in the circuit court had said, okay, let's take into consideration the defendant was served five months and 27 days, I don't care that the defendant had moved to another state. I'll consider that prong. To me, the two DWPs were much more compelling to dismiss this case than making your entire argument on the 11 months and not giving enough play to the fact that the defendant had moved to Florida. Okay. If there are no more questions, you'll have an opportunity to make this public. Thank you, Judge. Thank you, Justice. Mr. Patrick, you may proceed. Good afternoon, Your Honors. You may please the court. My name is Joshua Patrick, and I represent the defendant, Napoli Mark Wisted, in this case. Before I get into the meat of my speech, I want to address a few points that were made. These are some sort of big-picture things, is that I think it's important to note that counsel does not mention in the briefing at all that the trial court abused its discretion. That did not come out until oral argument in this case. All the briefing on this case, it's not mentioned once. And there's a good pattern emerging here, too, because I see counsel standing here and stating that there was an agreement with the adjuster not to serve the defendant. And as Justice Bertha correctly noted, that's not in writing. And it's not just that it's not in writing in an affidavit, which is required in order to respond once the burden is shifted. That's not committed to in the briefs. It's not committed to in the briefs before the trial court. This is only something that's coming out in oral arguments. And the problem that it creates is that if counsel is not going to – if the plaintiffs aren't going to commit to these details in writing, then I have no intelligible way to refute them substantively. But because they're not in writing, I believe these arguments are waived. The arguments that are made when they've been made before the lower courts, they were very vague. There was this notion of a vague understanding.  So counsel mentions that there's an agreement not to serve the defendant, but the decision not to issue the initial summons was not intentional. So why would that decision not be intentional? If it was pursuant to an agreement, that's necessarily intentional. And the other problem with that approach is that if we look at the orders vacating the DWP that are in the record, both of them granted the plaintiff leave to issue an alias summons. If there was an agreement not to serve the defendant, then why would he be asking for leave to issue an alias summons? So there are – so the actual evidence that's in the record and the materials that are in the record and what's been committed to in writing in this case contradicts these statements. And I think it's important to note here as well that – and this was kind of hinted at, but just to sort of note that even if this Court does not decide to adopt either Millar or Siebert, it's still not an abuse of discretion. And that wasn't addressed before the trial court. As Your Honors have noted, and we've cited I believe it was five cases in our brief at page 19, that five months is sufficient to make a prima facie showing in order to shift the burden to the plaintiff to prove reasonable diligence. So there's a way to resolve this case without necessarily adopting Millar or Siebert, but if this Court is inclined to do so, Millar is the correct approach for many reasons that Your Honors have raised. We raised a lot of those issues in the brief. But one point raised in the brief that I want to highlight is it's from a recent First District case of Galavis versus – excuse me – Midas Restoration. It was a 2023 First District case, and it's a bit of a different context, but it's important because it notes in detail the distinction between a DW – And the practical effect of vacating a DWP is to make it as though that order that was vacated was never entered. So that's significant to the questions that Your Honors was asking counsel about the case decision, because if we treat a DWP for what it is and we're vacating a DWP, then it is though that order, the actual dismissal order, was never entered. Counsel? Yes, ma'am. Are you saying that there's a vast distinction between a non-suit and a DWP? Vast? I'm not sure I would go so far as to say vast, but there are procedural distinctions to that. Well, what's the logic of vacating a DWP if, in fact, what it does is it nullifies the DWP and it leaves standing, as you just said, no negative dates to be taken off the total calendar. So I would address that in the sense that a plaintiff with a case's DWP does not even necessarily need to move to vacate the DWP. They have the option to refile under the savings statute. So because we have two different procedural mechanisms, they are distinct. I mean, there are certain circumstances under which they would end up at the same result, but if a plaintiff wants to exclude that time, if the case is DWP and a plaintiff has not obtained service and the plaintiff wants to exclude that time, then it's not unreasonable to expect the plaintiff to use the procedural mechanism that would allow them to do so. And the issue also becomes plaintiffs have any number of tactical reasons to want to maintain their voluntary right to refile. And that's a right. It's an absolute right under the statute. But the upshot to that was that a DWP should not be used to someone's tactical advantage. And that's sort of the issue. A plaintiff, where a case gets DWP twice, a plaintiff should not be able to do, by vacating a DWP, what they could not do through actually reinstating the case. Excuse me, through refiling the case. Should a non-suit not be used for a tactical advantage? A non-suit certainly can be used for a tactical advantage, but a DWP should not. A DWP necessarily implies a lack of diligence on behalf of the party that did not show up for court and the case was dismissed. I'm sorry. You've lost me. I failed to understand how any civil procedure is bad per se and as such cannot be used tactically in a proper way. It can, but that doesn't mean that a plaintiff should be absolved of the risks. If we're talking about a DWP where it was dismissed for want of prosecution, there is a risk that carries with that. And a plaintiff shouldn't necessarily aspire to have a case dismissed because they didn't show up to court. And certainly Your Honor is correct that there are any number of tactical considerations that could go into any number of decisions. But if a plaintiff is going to allow a case to be DWP'd, then, or multiple DWP's. Procedurally, if there was a DWP and someone wanted to non-suit the case, would they have to vacate the DWP or could they come in and non-suit it without vacating the DWP? I don't know anything specifically on point, but I believe a plaintiff would have to reinstate the case because a case can't be voluntarily non-suited if it's been dismissed. So in that case, in the event that the DWP was going to be used tactically, it would have to be vacated in order so that somebody could tactically use the non-suit? I think that's correct, yes. Okay. Let me back up a second. So I think what you're saying is if we adopt the third district, we would be saying if you're having problems serving a defendant, let your case be DWP'd. Let the time elapse because it wouldn't count against you until and unless you're able to find it. I think that's a genuine possibility. And that's the tactical advantage you're sort of talking about? That's correct. I believe that's correct. And I think it's important to note, too, is that in CYBRT, it's based on a misreading of case. CYBRT keeps referencing the case was refiled. Well, the case wasn't refiled. It was reinstated. So it's based on extrapolating a different context. And the rules read differently. They have different procedural mechanisms. They have different results. So just from a legal interpretation standpoint, CYBRT's conflation of a reinstatement with a refiling is inconsistent with other Illinois Supreme Court precedent, precedent of the districts as well. So a few other factors I want to discuss that were raised primarily in the reply brief. What's your comment, if I could preempt you? Sure. To Mr. Baez's comments about the judge being focused on the 11-month period of time and factoring that into all the factors instead of actually weighing each factor on something other than 11 months. It was mentioned under many of the factors, but the court gave some very specific details. The court laid out its reasoning in great detail, and it was not an abuse of discretion. I don't agree that everything necessarily follows from the 11-month. Yes, he mentioned it, but it's one factor, as the court noted. The length of time is just one of the factors that are considered for when a DWP or, excuse me, when a 103b motion should be granted with prejudice. So, and that's another one of the issues, too, is that when putting the notes in the reply brief, for instance, that some of these issues are beyond their control, and these were some points that were hinted at, but I think should be discussed in some more detail, is that the court didn't ignore those factors. The court looked at them and analyzed them specifically. The court specifically looked at how the plaintiff went about vacating the DWP. Another issue with the Seibert versus Millar distinction is the fact that here, the motion, the second motion to vacate the DWP was filed on June 7th. The notice of motion was not filed until August 3rd, and it was noticed for August 10th. So this notion that we can just cleanly exclude the time that a case was DWP'd, without respect to that factor as well, which is when the motion was filed, and that has to factor in as well. And that, I think, makes a very compelling case as to why Millar is the correct statement of the law on this issue, is because it has to look at the totality of the circumstances. The fact that a case was DWP'd is twice as part of the totality of the circumstances. The fact that the motion to vacate was filed over two months before it was presented, that's another factor that should be considered in all of this, because essentially it minimizes the amount of the plaintiff's diligence in this matter. And I don't think that's something that even Seibert intended in its whole. So, and looking at some of the other points, I keep harping on the abuse of discretion issue, and I really think that that is the kicker in all of this, is that there's no discussion given to these other factors. There's the vague notion about this agreement, which isn't anywhere in the record, the need to locate a defendant that moved across the country. It's not that simple. They haven't pointed to anything in the record that showed they had any difficulty locating the defendant. The trial court pointed out in its order that the plaintiff had requested alias summons. Correct. Correct, in both DWP orders, yes. That's correct. And there's notice, well, counsel makes reference to, in the brief, the defendant's constructive knowledge that the suit was pending is one of the signal factors. That's incorrect. The standard is actual knowledge as a result of ineffectual service. I think that that has the potential, if we look at constructive knowledge instead of actual knowledge. Well, that's not what Segal says, and even if it were, essentially it's saying that if it's insured has knowledge, then the insured has no right to contest time of service. The special circumstances here, I think it's necessary to note, too, is that the one case that's typically cited under Rule 103B for the special circumstances on the agreement with an insurer to withhold service, the McRoberts case. In that case, it was a very specific, the agreement that was set was very specific. It was set that the plaintiff's attorney told the insurer that they were going to be filing suits, let's continue to negotiate. If you disagree, and while we withhold service, while we do, if you disagree, let me know. That, and then there was no response. Well, there was acknowledgement, but no objection. So if we're going to focus on these negotiations with the insured pursuit, it is important to note that the case that found that that was special circumstances was on a very specific agreement on very specific facts. And what counsel has stated is not similar to those facts, and there's nothing in the record that would establish those facts. So the other case I want to draw the court's attention to is the Womack v. Jackson County Nursing Home case. It's interesting to note in that one that where the defendant's nursing home was actually interviewed by a local newspaper after the lawsuit was filed. And that was one of the factors that was raised before the court about the actual knowledge of the defendant. And even in a situation where the defendant is on the record in the local press discussing the accident, or the lawsuit even, that does not outweigh the obvious lack of diligence and service, which is a similar fact pattern to what we're dealing with here. At the end of the day, they're not going to any... I see that my time has concluded. I briefly finished that sentence. They simply haven't pointed to any factors as to how the trial court abused its discretion in how it came down on the legal factors, and that should be disposible of this issue. Thank you. Any questions? I have no additional questions. No. Thank you. Thank you. Mr. Baez, you may make rebuttal. Thank you again, Justices. I just wanted to first touch upon the counsel said that the circuit court judge mentioned the first three prongs. Specifically, with the first prong, the judge, quote, and I quote, said, here the time period between the filing of the complaint and the service was approximately 11 1⁄2 months long. The original summons was not issued until approximately 11 months after the complaint was filed. Number two, prong number two. Again, plaintiffs did not have an original summons issued until 11 months after filing a complaint. That's what he has as one of his two sentences under the activities of the plaintiff. Prong number three, plaintiff's knowledge of defendant's location, which has nothing to do with the 11 months. Plaintiffs did not issue a summons until 11 months after filing the complaint. He has it in all three of his first three prongs. I think counsel's point was, yes, he does mention it, but he also gives other reasons. He doesn't, though. He doesn't give other reasons is what I'm up here. There's two sentences, and I can read both sentences. Again, plaintiff did not have an original summons issued until 11 months after filing a complaint. That's the first sentence on prong number two, activities of the plaintiff. Second sentence is, defendant was served out of state in Florida, so presumably the plaintiff's made some effort to locate the defendant at some point. The emphasis is on that 11 month again, and it has nothing to do with that prong. I agree. Even if he wanted to inherit or follow Malar, first prong, 11 months, which, again, is wrong. 11 and a half months is what his focus is on that first prong. Third prong, again, in one of his two sentences, the plaintiff did not issue a summons until 11 months after filing the complaint. And then, again, he mentions it on the last prong of the seven prongs, 11 days short of a year after the plaintiff's complaint was filed. So, again, it's the emphasis of the order. I think that there's a far more, we discussed some of the differences between the DWP and the refiling and some of the incentives that a plaintiff might have then to hold off from vacating a dismissal. I believe Justice was asking a question regarding that, and would it incentivize the plaintiff to hold off until we figured out the defendant's whereabouts. My rebuttal to that is that as you go past 30 days, it becomes more and more difficult to petition a court. You have to show a reasonable reason why you didn't vacate sooner than 30 days. There has to be a reason that's further than just non-suiting and refiling. That's a right you have versus a petition to vacate a motion to dismiss or to vacate a dismissal. After 30 days, you have to show a compelling reason as to why the dismissal should be vacated. So we're going to incentivize the plaintiff to hold off longer and longer because the longer it goes. Well, let me just be clear here. You did file the motion to vacate within 30 days since you didn't motion it up for another two months. Correct. And that wasn't any – there's no evidence in the record, and we didn't say anything that there was any malicious – But the calendar is what it is. Correct. Correct. It is what it is. That's beyond my control, and that's another reason why the plaintiff shouldn't be subject to – again, there might be some counties that could get you on there the next day or a day or two later, and there might be some counties that can't get you on there for a month on the docket, depending on who the judge is. And I don't think a plaintiff should be subject to timing requirements when a case is not active and pending. Even if you exclude the timeframe while the case is not pending, the activities of the plaintiff, prong number two, waiting, waiting after you file the notice and then motioning it up, is the matter of fact that the court can consider in terms of lack of diligence? There's no evidence that I waited or the plaintiffs waited in this case on getting heard on the motion to vacate the dismissal. There is just no evidence. It was just a calendaring. But there's no evidence that there was any waiting that was happening there. There wasn't waiting. Well, there's no evidence either way. There's no evidence that you sandbagged, and there's no evidence that this was the first time. That is correct, Your Honor. So I think that it would be irresponsible to – We just look at it, this many days, that's it. That's it. And that's how many days the case was dismissed. There's also no evidence of the plaintiff's knowledge of the defendant's vocation. There is. There's no evidence. The evidence is the EAB summons with the new address itself, right? That there's – unless I knocked on every door in America, there's no way I would have found out had I not made efforts to find out where the defendant was located. And so I had to get that address from somewhere, and we hired a special process server to find out where – Where was the information from the special process server? The affidavit was shown to the judge in the trial court. It just wasn't part of the record, which is unfortunate. When did you do that? When did you get a skip trace? That was in June. I don't have the exact date in front of me right now, but that was June. Okay. The cases that the appellee also cites here today as cases that even if you were to go with Sievert, show less than six months. I'm just going to point to those cases. Also Emerson, also Lewis. All of these cases are – show intentional delays and admitted – personally admitted intentional delays. One of them, Emerson, is actually a 13-month delay with address already known. All of these had the defendant's address already known as well. Is there any evidence in the record as to when you became counsel for the plaintiffs? There is no evidence in the record, correct. And I hear my buzzer. If the justices have any other questions, I'd be happy to answer them. I have nothing else. Okay. Thank you. We'll take the case under advisement.